UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
RENATO AYALA, BLAS GUTIEREZ, LEONEL
JIMENEZ and MIGUEL SERRANO, individually and
on behalf of all other employees similarly situated,

                    Plaintiffs,

                    - against -

LOOKS GREAT SERVICES, INC., KRISTIAN
TODD AGOGLIA, and JOHN AND JANE DOES
# 1-10,

                    Defendants.
---------------------------------------------------------------X

14-cv-6035 (ADS) (SIL)

**MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT
SUBMITTED BY DEFENDANTS
LOOKS GREAT SERVICES, INC.
AND KRISTIAN TODD AGOGLIA**

128917.2 9/8/2015

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

FACTS ......................................................................................................................2

    A.    Filing of Initial Complaint .........................................................................2

    B.    Filing of Defendants' First Motion to Dismiss the Complaint ...................3

    C.    Filing of the Amended Complaint ............................................................4

    D.    Defendants' Second Motion to Dismiss the Amended Complaint ..........5

    E.    This Court's July 23, 2015 Memorandum & Order Granting the Defendants' Motion to Dismiss..................................................................................6

    F.    Plaintiffs' Second Amended Complaint ..................................................7

STANDARD OF REVIEW ......................................................................................7

ARGUMENT ..........................................................................................................8

    POINT I  THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE WAGE THEFT PREVENTION ACT ..........................8

    POINT II  PLAINTIFFS HAVE FAILED TO PLEAD SUFFICIENT FACTS TO ALLEGE PERSONAL LIABILITY FOR KRISTIAN AGOGLIA UNDER THE FLSA OR NYLL ..............................................................11

CONCLUSION........................................................................................................17

128917.2 9/8/2015

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Well-S Industrial,*
2015 U.S. Dist. LEXIS 109811 (S.D.N.Y. 2015) .................................................................11

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S. Ct. 1937 (2009) ...................................................................................7

*Ayala v. Looks Great Services, Inc.,*
2015 U.S. Dist. LEXIS 96790 (E.D.N.Y. 2015) ................................................................6, 8

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ...........................................................................................................7, 14

*Benavidez v. Plaza Mexico,*
2014 U.S. Dist. LEXIS 38627 (S.D.N.Y. 2012) ..................................................................9

*Collado v. Donnycarney Restaurant,*
2015 U.S. Dist. LEXIS 104728 (S.D.N.Y. 2015) ................................................................10

*Eschmann v. White Plains Crane Service,*
2014 U.S. Dist. LEXIS 38580 (E.D.N.Y. 2014) ..................................................................9

*Harris v. Ideal Discount Market,*
2014 U.S. Dist. LEXIS 76117 (E.D. La. 2014) ...............................................................16, 17

*Herman v. RSR Security Services LTD,*
172 F.3d 132 (2d Cir. 1999) ................................................................................................12

*Irizarry v. Catsimatidis,*
722 F.3d 99 (2d Cir. 2013) ..................................................................................................12

*Jiao v. Chen,*
2007 WL 4944767 (S.D.N.Y. 2007) .....................................................................................12

*Karic v. Major Auto. Companies Inc.,*
2014 WL 1508448 (E.D.N.Y. 2014) .....................................................................................12

*Nakahata v. New York-Presbyterian Healthcare System, Inc.,*
2012 WL 3886555 (S.D.N.Y 2012) ..................................................................................14, 15

*Reyes v. City Univ. of N.Y.,*
2007 WL 2186961 (S.D.N.Y. 2007) .....................................................................................7

128917.2 9/8/2015

*Ruotolo v. City of New York,*
    514 F.3d 184 (2d Cir. 2008) ................................................................... 7

*Switzoor v. SCI Engineering, P.C.,*
    2013 U.S. Dist. LEXIS 129994 (S.D.N.Y. 2013) ................................. 13

*Tracy v. NVR, Inc.,*
    2009 WL 3153150 (W.D.N.Y. 2009) ....................................... 12, 15, 16

*Wood v. TriVita, Inc.,*
    No. 2009 U.S. Dist. LEXIS 63996 (D. Ariz. 2009) ............................. 16

**Statutes**

29 U.S.C. § 203(d) ........................................................................................ 11

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ............................... *passim*

New York Labor Law § 190(3) ..................................................................... 11

New York Labor Law § 195(3) ................................................................ *passim*

128917.2 9/8/2015

## PRELIMINARY STATEMENT

Defendants Looks Great Services, Inc. and Kristian Todd Agoglia ("Defendants") submit this memorandum of law in support of their motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Second Amended Collective and Class Action Complaint filed on August 24, 2015.

Plaintiffs Renato Ayala, Blas Gutierez, Leonel Jimenez and Miguel Serrano ("Plaintiffs") allege that their employer, Looks Great Services, Inc. ("Looks Great") and its owner Kristian Agoglia failed to pay them overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA").  Plaintiffs also assert state law claims under the New York Labor Law ("NYLL"), including failure to pay overtime and that they were not given written notice of their rate of pay in violation of NYLL § 195(3).

The Defendants maintain that dismissal is warranted because:

1.      The state law claims under the Wage Theft Prevention Act, *i.e.*, the alleged failure to provide proper wage notices in violation of NYLL §195(3), fail to state a claim because the statute did not become effective until after the employment of at least three (3) of the Plaintiffs had ended.

2.      Plaintiffs have failed to plead plausible claims against the individual Defendant, Kristian Agoglia.

## FACTS

**A.      Filing of Initial Complaint**

On or about October 15, 2014, the Plaintiffs filed their initial Complaint (ECF Docket

Entry No. 1) alleging violations of the FLSA and NYLL.  According to the initial Complaint, all

four (4) of the Plaintiffs are former employees of Defendant Looks Great.  Plaintiffs alleged:

> 8.      Plaintiff Ayala is a resident of the State of New York, County of Suffolk.  Ayala was employed by Defendants as a landscape/laborer from <u>2004 through 2011</u>.
>
> 9.      Plaintiff Gutierez is a resident of the State of New York, County of Suffolk.  Gutierez was employed by Defendants as a landscape/laborer from 2005 through approximately <u>March 2011</u>.
>
> 10.     Plaintiff Jimenez is a resident of the State of New York, County of Suffolk.  Plaintiff Jimenez was employed by the Defendants as a landscaper/laborer from 2004 through approximately <u>December 2010</u>.
>
> 11.     Plaintiff Serrano is a resident of the State of New York, County of Suffolk.  Plaintiff Serrano was employed by the Defendants as a landscaper/laborer from 2006 through approximately <u>March 2011</u>.

(Initial Complaint ¶¶ 8-11 (emphasis added)). These allegations were repeated in Paragraphs 35

through 38 of the initial Complaint.

In Paragraph 49 of the initial Complaint, Plaintiffs vaguely alleged that they worked

overtime in every week but did not identify any specific week in which they actually worked

more than forty (40) hours.  Similarly, at no time did Plaintiffs allege how many overtime hours

they actually worked in any one (1) workweek.

In Paragraph 44 of the initial Complaint, Plaintiffs alleged that they worked more than

ten (10) hours every day and were entitled to receive spread of hours pay on those days but did

not identify any particular day or week.

2

Finally, in Paragraph 73 and 74 of the initial Complaint, Plaintiffs alleged that the Defendants failed to provide the Plaintiffs with proper wage statements in violation of New York Labor Law § 195(3):

> 73.    The Defendants failed to furnish with each wage payment a statement listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages, in violation of NYLL, § 195(3).

> 74.    Due to the Defendants' violations of NYLL, §195(3), the Plaintiffs on behalf of themselves and all other similarly situated members of the Class are entitled to recover from the Defendants liquidated damages of $100.00 per workweek that the violation occurred, up to a maximum of $2,500.00, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to NYLL, § 198(1-d).

(Initial Complaint ¶¶ 73-74).

## B.    Filing of Defendants' First Motion to Dismiss the Complaint

On November 3, 2014, Defendants moved to dismiss the initial Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* ECF Docket Entries Nos. 4-5). Defendants maintained that dismissal was warranted because:

1.    <u>All four</u> of the Plaintiffs' claims under the FLSA were time barred as a matter of law. (Def. Mem. of Law, ECF Docket Entry No. 5 at pp. 5-6).

2.    The initial Complaint failed to adequately plead a violation of the FLSA or Labor Law. (*Id.* at pp. 6-8).

3.    The spread of hours claims failed to state a claim under state law. (*Id.* at pp. 9-10).

3

4.    The claims under the Wage Theft Prevention Act, *i.e.*, the alleged failure to provide proper wage statements, failed to state a claim because the statute did not become effective until the employment of <u>all</u> of the Plaintiffs had ended.  (*Id.* at pp. 11-12).

### C.    Filing of the Amended Complaint

In response to Defendants' motion to dismiss the initial Complaint, on November 5, 2014 the Plaintiffs filed their Amended Complaint.  (ECF Docket Entry No. 6).

The Amended Complaint was substantially similar to the initial Complaint.  The one major difference was that Plaintiff Ayala changed the period of time he allegedly worked for the Defendants.  Specifically, in Paragraph 8 of the Amended Complaint, Plaintiff Ayala alleged as follows:

> 8.    Plaintiff Ayala is a resident of the State of New York, County of Suffolk.  Ayala was employed by Defendants as a landscape/laborer from <u>approximately</u> 2004 through ~~2011~~ <u>at least March 2012</u>.

(Amended Complaint ¶8 (underlined and strikeout text signify amendments).

In the Amended Complaint, as in their initial Complaint, Plaintiffs alleged that they worked overtime in every week they worked for Defendants, but did not identify any specific week in which they actually worked more than forty (40) hours.  Similarly, at no time did Plaintiffs allege how many overtime hours they actually worked in any one (1) workweek.

In Paragraph 49 of the Amended Complaint, as in the initial Complaint, Plaintiffs alleged that they worked more than ten (10) hours every day and were entitled to receive spread of hours pay on those days, but did not identify any particular day or week.

128917.2 9/8/2015

Finally, in Paragraphs 81 and 82 of the Amended Complaint, like in the initial complaint, Plaintiffs alleged that the Defendants failed to provide the Plaintiffs with wage statements in violation of New York Labor Law § 195(3).  Plaintiffs alleged as follows:

> 81.    Defendants failed to furnish with each wage payment a statement listing: i) the dates of work covered by that payment of wages; ii) name of employee; iii) name of employer; iv) address and phone number of employer; v) rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; vi) the regular hourly rate or rates of pay; vii) the overtime rate or rates of pay; viii) the number of regular hours worked, and the number of overtime hours worked; ix) gross wages; x) deductions; xi) allowances, if any, claimed as part of the minimum wage; and, xii) net wages, in violation of NYLL § 195(3).

> 82.    Due to Defendants' violations of NYLL § 195(3), Plaintiffs, on behalf of themselves and all other similarly situated members of the Class, are entitled to recover from the Defendants liquidated damages of $100.00 per workweek that the violation occurred, up to a maximum of $2,500.00, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to NYLL § 198(1-d).

(Amended Complaint ¶¶ 81-82).

In short, the Amended Complaint was substantially the same as the initial Complaint.

**D.    Defendants' Second Motion to Dismiss the Amended Complaint**

On November 18, 2014 the Defendants filed a second motion to dismiss, this time directed at the Amended Complaint.  (*See* ECF Docket Entries Nos. 7-8). The Defendants maintained that dismissal was warranted because:

> 1.    Plaintiffs' claims under the FLSA were time barred as a matter of law.

(Def. Mem of Law, ECF Docket Entry No. 8 at pp. 8-9).

> 2.    The Amended Complaint failed to adequately plead a violation of the FLSA or Labor Law.  (*Id*. at pp. 10-14).

5

3.      The spread of hours claims failed to state a claim under state law.  (*Id.* at pp. 15-16).

4.      The claims under the Wage Theft Prevention Act, *i.e.*, the alleged failure to provide proper wage statements under §195(3), failed to state a claim because the statute did not become effective until after Plaintiffs' employment with the Defendants had ended.  (*Id.* at pp. 17-18).

Defendants further maintained that if the federal claims were dismissed, this Court should not exercise supplemental jurisdiction over any remaining state law claims.

**E.      This Court's July 23, 2015 Memorandum & Order Granting the Defendants' Motion to Dismiss**

On July 23, 2015, this Court granted the Defendants' Motion to Dismiss the Amended Complaint but also provided the Plaintiff with leave to replead their FLSA overtime claims and NYLL claims.  (*See* ECF Docket Entry No. 15); *Ayala v. Looks Great Services, Inc.*, 2015 U.S. Dist. LEXIS 96790 (E.D.N.Y. 2015).  In such decision, this Court held as follows:

1.      Plaintiff had failed to plead a plausible claim under the FLSA. Specifically, the allegations set forth in the Amended Complaint lacked the requisite specificity required under Second Circuit precedent.

2.      Plaintiff had no private right of action against the Defendants for their alleged failure to keep records

3.      The Court did not reach the issues of whether the state law claims should be dismissed, noting that it would not exercise supplemental jurisdiction over state law claims when the federal causes of action were dismissed.

(*See id.*).

6

**F.     Plaintiffs' Second Amended Complaint**

On August 24, 2015, the Plaintiffs filed their Second Amended Complaint. (*See* Docket Entry No. 16).  The causes of action set forth therein included:

      1.     Failure to pay overtime in violation of the FLSA.

      2.     Failure to pay overtime in violation of the NYLL.

      3.     Failure to issue proper wage statements in compliance with NYLL § 195(3).

Defendants now seek dismissal of the Plaintiff's third cause of action for their alleged failure to issue proper wage statements in violation of NYLL § 195(3).  They do so on the same basis as they argued in their two prior filings, *i.e.*, that Plaintiffs are basing their claims on a statute that was not in existence or in effect at the time.  Defendants also continue to maintain that the complaint fails to state a cause of action under the FLSA, *i.e.*, the Second Amended Complaint fails to plead a plausible claim against individual Defendant Kristian Agoglia.

## STANDARD OF REVIEW

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as amplified by *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), sets forth the standard applicable for motions to dismiss. *See, e.g.*, *Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008) (strictly applying *Twombly* standard in employment discrimination cases and affirming dismissal of retaliation claim on a 12(b)(6) motion); *Reyes v. City Univ. of N.Y.*, 2007 WL 2186961, *5 (S.D.N.Y. 2007) (dismissing retaliation claim on a motion to dismiss in light of *Twombly* because Plaintiff "has not 'amplif[ied] his claim with some factual allegation in those contexts where some amplification is needed to render the claim plausible.'").

As this court stated in its prior Memorandum of Decision and Order:

128917.2 9/8/2015

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court generally "'accept[s] all allegations in the complaint as true and draw all inferences in the nonmoving party's favor.'" *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (*quoting Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003)). However, a complaint must plead "enough facts to state a claim to relief that is plausible on its face" to survive a 12(b)(6) motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). In particular, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.; see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted); *Luna v. N. Babylon Teacher's Org.*, 11 F. Supp. 3d 396, 401 (E.D.N.Y. Apr. 7, 2014) ("Conclusory allegations of legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.") (*citing Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006)).

ECF Docket No. 15 at p. 4, 2015 U.S. Dist. LEXIS 96790 at * 6.

Even accepting all of Plaintiffs' allegations as true, as set forth herein, the third cause of action in the Second Amended Complaint must be dismissed. The claims against Defendant Agoglia should be dismissed as well for failure to state a claim.

## ARGUMENT

### POINT I

### THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE WAGE THEFT PREVENTION ACT

In Paragraphs 83 and 84 of the Second Amended Complaint, Plaintiffs allege:

83.    Defendants failed to furnish **Plaintiffs** and each member of the Class with each wage payment a statement listing: i) the dates of work covered by that payment of wages; ii) name of employee; iii) name of employer; iv) address and phone number of employer; v) rate or rates of pay and basis thereof, whether paid by the hour,

8

shift, day, week, salary, piece, commission, or other; vi) the regular hourly rate or rates of pay; vii) the overtime rate or rates of pay; viii) the number of regular hours worked, and the number of overtime hours worked; ix) gross wages; x) deductions; xi) allowances, if any, claimed as part of the minimum wage; and, xii) net wages, in violation of NYLL § 195(3).

84.     Due to Defendants' violations of NYLL § 195(3), **Plaintiffs**, on behalf of themselves and all other similarly situated members of the Class, are entitled to recover from the Defendants liquidated damages of $100.00 per workweek that the violation occurred, up to a maximum of $2,500.00, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to NYLL § 198(1-d).

(Second Amended Complaint ¶¶ 83-84 (emphasis added)).

Paragraphs 83 and 84 of the Second Amended Complaint are virtually identical to Paragraph 81 of the Amended Complaint and Paragraphs 73 and 74 of the initial Complaint. Although Plaintiffs were previously placed on notice twice that this cause of action fails to state a claim, they have nonetheless continued to pursue these claims.

The problem with this claim is that even if true, the requirement that employers provide employees with certain wage statements did not become effective until April 2011—*after* Plaintiffs Gutierez, Jimenez and Serrano stopped working for the Defendants.   The Second Amended Complaint clearly alleges that Plaintiff Gutierez worked through March 2011, Plaintiff Jimenez worked until December 2010, and Plaintiff Serrano worked until March 2011.   (*See* Second Amended Complaint ¶¶ 10-12).   However, it is equally clear that the Wage Theft Protection Act did not take effect until April 9, 2011.   *See Eschmann v. White Plains Crane Service,* 2014 U.S. Dist. LEXIS 38580, * 37 (E.D.N.Y. 2014) (Wage Theft Prevention Act became effective April 9, 2011); *Benavidez v. Plaza Mexico*, 2014 U.S. Dist. LEXIS 38627, *24, n. 8 (S.D.N.Y. 2012) ("In April of 2011, the New York Wage Theft Prevention Act (WTPA) became effective."); McKinney's New York Labor Law § 195(3).

9

In short prior to April 9, 2011, NYLL § 195(3) provided as follows:

>   Every employer shall:
>
>   3.      furnish each employee with a statement with every payment of wages, listing gross wages, deductions and new wages and upon request of an employee furnish an explanation of how such wages were computed.

Thereafter, effective April 9, 2011, the statute provided as follows:

>   Every employer shall:
>
>   1.      furnish each employee with a statement with every payment of wages, listing the following:  the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.  For all employees paid a piece rate, the statement shall include the applicable piece rate or rates of pay and number of pieces completed at each piece rate. Upon the request of an employee, an employer shall furnish an explanation in writing of how such wages were computed.

(Copies of the statute as it existed prior to April 9, 2011 and the amended statue are annexed hereto as Appendix A).

NYLL § 198(1-d) *currently* provides for certain penalties if an employer does not provide the written statements required by NYLL § 195(3).  However, NYLL § 198(1-d), like NYLL § 195(3), did not become effective until April 9, 2011. *See Collado v. Donnycarney Restaurant*, 2015 U.S. Dist. LEXIS 104728, *22 (S.D.N.Y. 2015) ("For the period between April 9, 2011 and February 27, 2015, the WTPA permitted employees to recover 'damages of [$100] for each week

10

that the violations occurred ... but not to exceed a total of $2,500.' N.Y. Labor L. § 198(1-d) (McKinney 2011); 2010 N.Y. Sess. Laws ch. 564 (McKinney)."  (alteration in original, emphasis added)); *Alvarez v. Well-S Industrial*, 2015 U.S. Dist. LEXIS 109811, *16-17 (S.D.N.Y. 2015) ("Effective April 9, 2011, NYLL provides that '[i]f any employee is not provided a statement or statements as required by subdivision three of section one hundred ninety-five of this article, he or she shall recover in a civil action damages of one hundred dollars for each work week that the violations occurred or continue to occur, but not to exceed a total of twenty-five hundred dollars.' NYLL § 198(1-d).").

Thus, three of the Plaintiffs (Gutierez, Jimenez and Serrano) have commenced an action based on a statute that was not in effect while they were employed by Defendants!  All of this was pointed out to Plaintiffs in Defendants' first Memorandum of Law to dismiss the initial Complaint (ECF Docket Entry No. 5 at pp. 11-12), as well as Defendants' second Memorandum of Law to dismiss the Amended Complaint (ECF Docket Entry No. 8 at pp. 17-18).  Again, it is unclear why these Plaintiffs have continued to pursue such claims.  In any case, these claims must be dismissed as a matter of law.

## POINT II

### PLAINTIFFS HAVE FAILED TO PLEAD
### SUFFICIENT FACTS TO ALLEGE PERSONAL LIABILITY
### FOR KRISTIAN AGOGLIA UNDER THE FLSA OR NYLL

Under the FLSA, an employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee…" 29 U.S.C. § 203(d).  Similarly, under the NYLL, an employer is defined as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." N.Y. Lab. Law § 190(3).

11

Courts in the Second Circuit apply a four-factor "economic reality" test to determine whether an individual is, in fact, an "employer" under the FLSA. Courts will look to "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013) *quoting Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984); *see Karic v. Major Auto. Companies Inc.*, 2014 WL 1508448 (E.D.N.Y. 2014). This four-prong economic reality test is applied to the totality of the circumstances; no single factor is dispositive of the inquiry. *Irizarry*, 722 F.3d at 106.

The Second Circuit has held that for an individual defendant executive or officer of a corporation to be an "employer," he must "possess control over a company's actual 'operations' that relates to a plaintiff's employment." *Irizarry*, 722 F.3d at 109; *Herman v. RSR Security Services LTD*, 172 F.3d 132, 140 (2d Cir. 1999). "Evidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate "employer" status." *Irizary*, 722 F.3d at 109.

A plaintiff fails to satisfy the FLSA pleading requirements when the plaintiff names an individual defendant based solely on the defendant's job title, function, or role within a company. *Tracy v. NVR, Inc.*, 2009 WL 3153150, *5 (W.D.N.Y. 2009) (holding that permitting individual liability under the FLSA based on the individual defendant's title, function or role within a company, "would license suit under the FLSA against every high level officer and board member of large public companies simply because of the position the individual holds"); *Jiao v. Chen*, 2007 WL 4944767, *10 (S.D.N.Y. 2007) ("where a plaintiff-employee is employed by a

12

corporation, individual officers or directors of the corporation may be deemed employers under the FLSA where the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines employees' salaries and makes hiring decisions"); *Switzoor v. SCI Engineering, P.C.*, 2013 U.S. Dist. LEXIS 129994, *17 (S.D.N.Y. 2013) ("A person may not be held individually liable for a company's FLSA violations simply because he was an executive of that company.").

In their Second Amended Complaint, Plaintiffs here allege as follows:

> 13.     Upon information and belief, defendant Agoglia is an owner, officer, shareholder, and manager of defendant Looks Great. Upon information and belief, at all times relevant to the allegations herein, Agoglia had the power to hire and fire employees of Looks Great, establish their wages, set their work schedules, and maintain their employment records.
>
> 14.     Upon information and belief, Defendants John and Jane Does # 1-10 are owners, officers, shareholders, and/or managers of Looks Great. Upon information and belief, at all times relevant to the allegations herein, John and Jane Does # 1-10 had the power to hire and fire Looks Great employees, establish their wages, set their work schedules, and/or maintain their employment records.

(Second Amended Complaint ¶¶ 13-14).

These vague and conclusory allegations are simply insufficient to state a plausible FLSA claim against Defendant Agoglia. The Second Amended Complaint does not indicate a single factual allegation in support of these conclusions. Not only are these allegations made "[u]pon information and belief" but the allegations are so vague that Plaintiffs do not even know who their employers were, *e.g.*, John and Jane Doe!  Plaintiffs allegedly worked for years at Defendant Looks Great and have now had three chances to assert a viable complaint against the individual defendants. But all they have come up with are conclusory allegations that merely recite the elements of the economic realities test but in fact make no reference to any impact on

13

the specific working conditions of the Plaintiffs, *i.e.*, there is nothing in the Second Amended Complaint remotely suggesting that Defendant Agoglia or any other individual was actually responsible for the improper pay practices alleged in the Second Amended Complaint. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").

In *Nakahata v. New York-Presbyterian Healthcare System, Inc.*, 2012 WL 3886555 (S.D.N.Y 2012), plaintiffs named their employing hospitals as defendants, in addition to some individuals who they claimed were "employers" under the FLSA, including the corporation's president, the CEO and the vice-president of human resources. For example, the plaintiffs alleged that the CEO and a senior vice president of the company had "the authority to make 'employment decisions' concerning hirings and firings, and were 'involved in the creation and/or maintenance of the illegal policies.'" *Id.* at *11. The plaintiffs also alleged that another senior vice president and president of the company had "the authority to make 'employment decisions' concerning hirings and firings, employees' schedules and hours, and were 'involved in the creation and/or maintenance of the illegal policies.'" *Id.* The court, however, held that such allegations were insufficient to plausibly plead that the individuals defendants were "employers" under the law, and dismissed the claims against them. In so holding, the court explained:

> These allegations are 'nothing more than conclusory allegations designed to satisfy the economic reality test.' *Sampson [v. MediSys Health Network, Inc]*, 2012 WL 3027850, at *15-16 (recommending dismissal of nearly identical allegations as insufficient to show individual defendants were plaintiffs' employer). While plaintiffs repeatedly allege that these individual defendants had the "authority" to make employment decisions, "upon careful analysis, the complaint asserts little more than because [the individual defendants held positions as directors and

14

officers], then each must have had authority to take the actions that comprise the 'economic realities' test, and that because each had the authority to take those actions, then each must have in fact taken those actions." *Tracy v. NVR, Inc.*, No. 04-CV-6541L (MWP), 2009 WL 3153150, at *5 (W.D.N.Y. Sept. 30, 2009), *adopted in relevant part*, 667 F.Supp.2d 244. "To accept the adequacy of these allegations would license suit under the FLSA against every high level officer and board member of large public companies simply because of the position the individual holds." *Id.* Plaintiffs have not alleged sufficient facts to support their conclusory assertions. "The individual sought to be held liable cannot be just any employee with some supervisory control over other employees and must be instrumental in causing the corporation to violate the FLSA." *Manning* [*v. Boston Med. Ctr. Corp*], 2012 WL 1355673, at *2 (quotations omitted). Plaintiffs have not alleged facts to plausibly show that the individual defendants knew of, let alone created or maintained, the purported unlawful policies.

*Id.* at *12.

In *Tracy v. NVR, Inc.*, 2009 WL 3153150 (W.D.N.Y.), *adopted in part*, 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009), Magistrate Judge Payson found that plaintiffs failed to allege any facts to support the assertion that the Chairman and CEO "ever hired, fired or supervised 'the workers in question.'" *Id.*, 2009 WL 3153150 at *20 (citation omitted). Rather, the court held that the sole factual support for the plaintiffs' allegations was the mere fact that the proposed defendants held the positions of chairman and CEO, respectively. The court found such allegations wholly inadequate:

In other words, upon careful analysis, the complaint asserts little more than because Schar was Chairman and Saville was President of NVR, then each must have had authority to take the actions that comprise the 'economic realities' test, and that because each had the authority to take those actions, then each must have in fact taken those actions. To accept the adequacy of these allegations would license suit under the FLSA against every high level officer and board member of large public companies simply because of the position the individual holds. Although the definition of employer under the FLSA is indeed broad, I do not believe that it

15

> is this broad or unbounded by the requirements recently enunciated
> in *Iqbal* and *Twombly*.

*Id.* at *21 (emphasis added).   In addition, on review, District Court Judge Larimer held that plaintiffs' allegation that the vice president of human relations "had the general authority to hire and/or fire employees, and that he maintained employee records" was wholly insufficient to state a claim.   *Tracy*, 667 F. Supp. 2d at 247.   The court specifically found fault with the plaintiffs' failure to allege that the vice president of human relations hired any employees, as well as their failure to provide any evidence that the vice president of human relations exercised control over employees' work schedules, conditions of employment, and compensation:

> [M]ere boilerplate allegations that an individual meets the various prongs of the economic reality test stated solely upon information and belief and without any supporting details - essentially "a formulaic recitation of the elements of a cause of action" – are insufficient to raise plaintiffs' right to relief "above a speculative level" with respect to that individual's liability as an employer under the FLSA.

*Id.*; *see Bravo, Eastpoint Int'l, Inc.*, 2001 U.S. Dist. LEXIS 3647, *4-5 (S.D.N.Y. 2001) (dismissing complaint against individual because plaintiffs alleged no facts establishing power to control the plaintiffs); *Wood v. TriVita, Inc.*, No. 2009 U.S. Dist. LEXIS 63996, *9 (D. Ariz. 2009) (denying plaintiffs motion to join individual defendants because the proposed allegations were "insufficient to show that the additional defendants were joint employers for purposes of the FLSA.").

In *Harris v. Ideal Discount Market*, 2014 U.S. Dist. LEXIS 76117 (E.D. La. 2014), the plaintiff alleged that a number of individuals were subject to liability under the FLSA because they were employers. Using boilerplate language that was even more descriptive than what Plaintiffs have alleged here, the court dismissed the complaint. Specifically, the plaintiffs in

16

*Harris* alleged that each of the individuals "actively manages, supervises and directs the business affairs and operations of the Corporate Defendants."  But that was found to be far too vague to a state a claim:

> The Court finds Plaintiff's allegations relative to the Individual Defendants insufficient to satisfy the requirements of Rule 8 for essentially the reasons stated in the memorandum filed in support of the Individual Defendants' motion. As an initial matter, Plaintiff offers no factual allegations connecting any of the 55 employees listed on Exhibit A to any of the Individual Defendants or to any specific store location. Nor does Plaintiff provide any underlying facts to support the allegations that the Individual Defendants are 'employers' for purposes of establishing individual liability under the FLSA. Rather, Plaintiff merely provides a boilerplate recitation of the elements of the economic reality test.
>
> For instance, the Amended Complaint offers no factual details outlining the Individual's Defendant's specific roles at any of the involved stores and/or the nature of their interaction with each of the 55 employees. Conclusory assertions are not enough. ...
>
> * * *
>
> Although the Court recognizes that Plaintiff presently may not be in possession of facts sufficient to bear his burden of proof relative to establishing 'employer' liability against each of the Individual Defendants as to one or more of the individuals listed on Exhibit A to the Amended Complaint, naked assertions devoid of factual enhancement are insufficient to state a claim to relief that is facially plausible on its face.  Accordingly, for the reasons stated, Individual Defendants motion to dismiss Plaintiff's Amended Complaint is granted.

*Id.* at *12-14.

Plaintiffs' boilerplate allegations against individual Defendant Kristian Agoglia are patently insufficient as a matter of law.  As such, these claims must be dismissed.

## CONCLUSION

For all of the foregoing reasons, the claims alleged pursuant to Labor Law 195(3) should be dismissed in their entirety, and individual Defendant Kristian Agoglia should be dismissed

17

from this case.  Defendants should be awarded all their costs and fees and any other relief this

Court deems appropriate.

Dated:   Garden City, New York
         September 8, 2015

BOND, SCHOENECK & KING, PLLC

By: _____
    Mark N. Reinharz (MR 6201)
    *Attorneys for Defendants Looks Great*
    *Services, Inc. and Kristian Todd Agoglia*
    1010 Franklin Avenue, Suite 200
    Garden City, New York 11530
    (516) 267-6320
    mreinharz@bsk.com

18

# APPENDIX A

*2009 NY CLS Labor § 195*
2009 New York Code Archive

**NEW YORK CONSOLIDATED LAW SERVICE  > LABOR LAW  > ARTICLE 6. PAYMENT OF WAGES**

## § 195. Notice and record-keeping requirements

Every employer shall:

1. [Until Oct 26, 2009] notify his employees at the time of hiring of the rate of pay and of the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article;

1. [Eff Oct 26, 2009] notify his or her employees, in writing, at the time of hiring of the rate of pay and of the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article, and obtain a written acknowledgement from each employee of receipt of this notice. Such acknowledgement shall conform to any requirements established by the commissioner with regard to content and form. For all employees who are eligible for overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by law or regulation, the notice must state the regular hourly rate and overtime rate of pay;

2. notify his employees of any changes in the pay days prior to the time of such changes;

3. furnish each employee with a statement with every payment of wages, listing gross wages, deductions and net wages, and upon the request of an employee furnish an explanation of how such wages were computed;

3-a. in addition, every railroad corporation shall furnish each employee with a statement with every payment of wages listing accrued total earnings and taxes to date and further furnish said employee at the same time with a separate listing of his daily wages and how they were computed;

4. establish, maintain and preserve for not less than three years payroll records showing the hours worked, gross wages, deductions and net wages for each employee.

5. notify his employees in writing or by publicly posting the employer's policy on sick leave, vacation, personal leave, holidays and hours.

6. notify any employee terminated from employment, in writing, of the exact date of such termination as well as the exact date of cancellation of employee benefits connected with such termination. In no case shall notice of such termination be provided more than five working days after the date of such termination. Failure to notify an employee of cancellation of accident or health insurance subjects an employer to an additional penalty pursuant to section two hundred seventeen of this chapter.

## History

Add, L 1966, ch 548, § 2, eff Oct 1, 1966.
Former § 195, add, L 1921, ch 50, with substance transferred from § 10; amd, L 1935, ch 235,

that she and male employees received disparate wages for substantially equal jobs under similar working conditions, was too conclusory to state claim under Equal Pay Act (EPA) or the New York State Equal Pay Law.  Rose v. Goldman, Sachs & Co., Inc., 2001, 163 F.Supp.2d 238.  Labor And Employment ⟺ 2480

**9.  Persons liable**

Employee's claims for violations of Equal Pay Act (EPA) and New York's counterpart could not be maintained against supervisor where evidence did not establish that supervisor controlled significant functions of the business or determined salaries and made hiring decisions.  Fayson v. Kaleida Health, Inc., 2002, 2002 WL 31194559, Unreported, affirmed 71 Fed.Appx. 875, 2003 WL 21523220.  Labor And Employment ⟺ 2458

**10.  Limitation of actions**

Claim against former employer based on alleged discriminatory promotions and raises was limited by employee in her answers to interrogatories to men who were hired some six years before claim was filed and, hence, was time barred by periods of limitations set forth in the Human Rights Law § 297 and the Civil

Rights Act, 42 U.S.C.A. § 2000e et seq.  Patrowich v. Chemical Bank (1 Dept.  1984) 98 A.D.2d 318, 470 N.Y.S.2d 599, affirmed 63 N.Y.2d 541, 483 N.Y.S.2d 659, 473 N.E.2d 11.  Civil Rights ⟺ 1732

**11.  Presumptions and burden of proof**

To prove discrimination under Equal Pay Act (EPA) and New York State Equal Pay Act (NYSEPA), plaintiff must show that: (1) employer pays different wages to employees of the opposite sex; (2) employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions.  Kassman v.  KPMG LLP, 2013, 925 F.Supp.2d 453.  Labor and Employment ⟺ 2461

Female university employee, a Senior Extension Associate (SEA), failed to establish prima face claim under federal or New York State Equal Pay Act (EPA), as three male SEAs used were not appropriate comparators, despite having same job titles and no higher education level, and just as many male SEAS earned lower salary than her as earned higher one.  Moccio v. Cornell University, 2012, 889 F.Supp.2d 539, affirmed 526 Fed.Appx.  124, 2013 WL 1943276.  Labor and Employment ⟺ 2462

## § 195.  Notice and record-keeping requirements

Every employer shall:

1.  (a) provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;  the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article;  the name of the employer;  any "doing business as" names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  the telephone number of the employer;  plus such other information as the commissioner deems material and necessary.  Each time the employer provides such notice to an employee, the employer shall obtain from the employee a signed and dated written acknowledgement, in English and in the primary

language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years. Such acknowledgement shall include an affirmation by the employee that the employee accurately identified his or her primary language to the employer, and that the notice provided by the employer to such employee pursuant to this subdivision was in the language so identified or otherwise complied with paragraph (c) of this subdivision, and shall conform to any additional requirements established by the commissioner with regard to content and form. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the notice must state the regular hourly rate and overtime rate of pay;

(b) The commissioner shall prepare templates that comply with the requirements of paragraph (a) of this subdivision. Each such template shall be dual-language, including English and one additional language. The commissioner shall determine, in his or her discretion, which languages to provide in addition to English, based on the size of the New York state population that speaks each language and any other factor that the commissioner shall deem relevant. All such templates shall be made available to employers in such manner as determined by the commissioner;

(c) When an employee identifies as his or her primary language a language for which a template is not available from the commissioner, the employer shall comply with this subdivision by providing that employee an English-language notice or acknowledgment;

(d) An employer shall not be penalized for errors or omissions in the non-English portions of any notice provided by the commissioner;

(e) The commissioner shall have discretion to waive or alter requirements of paragraph (a) of this subdivision for temporary help firms as defined in section nine hundred sixteen of this chapter.

2. notify his or her employees in writing of any changes to the information set forth in subdivision one of this section, at least seven calendar days prior to the time of such changes, unless such changes are reflected on the wage statement furnished in accordance with subdivision three of this section;

3. furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece,

commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked. For all employees paid a piece rate, the statement shall include the applicable piece rate or rates of pay and number of pieces completed at each piece rate. Upon the request of an employee, an employer shall furnish an explanation in writing of how such wages were computed;

3–a. in addition, every railroad corporation shall furnish each employee with a statement with every payment of wages listing accrued total earnings and taxes to date and further furnish said employee at the same time with a separate listing of his daily wages and how they were computed;

4. establish, maintain and preserve for not less than six years contemporaneous, true, and accurate payroll records showing for each week worked the hours worked; the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages for each employee. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the payroll records shall include the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, and the number of overtime hours worked. For all employees paid a piece rate, the payroll records shall include the applicable piece rate or rates of pay and number of pieces completed at each piece rate;

5. notify his employees in writing or by publicly posting the employer's policy on sick leave, vacation, personal leave, holidays and hours.

6. notify any employee terminated from employment, in writing, of the exact date of such termination as well as the exact date of cancellation of employee benefits connected with such termination. In no case shall notice of such termination be provided more than five working days after the date of such termination. Failure to notify an employee of cancellation of accident or health insurance

# PAYMENT OF WAGES                                    § 195
## Art. 6

subjects an employer to an additional penalty pursuant to section two hundred seventeen of this chapter.

(Added L.1966, c. 548, § 2.  Amended L.1977, c. 615, § 1;  L.1981, c. 256, § 1;  L.1989, c. 524, § 1;  L.2009, c. 270, § 1, eff. Oct. 26, 2009;  L.2010, c. 564, § 3, eff. April 9, 2011;  L.2014, c. 537, § 1, eff. Dec. 29, 2014.)

### Historical and Statutory Notes

**L.2014, c. 537 legislation**

Subd. 1, par. (a).  L.2014, c. 537, § 1, in the first sentence, deleted '', and on or before February first of each subsequent year of the employee's employment with the employer'' following ''at the time of hiring''.

L.2014, c. 537, § 13, amended by L.2015, c. 2, § 8, eff. Feb. 23, 2015, provides:

''§ 13.  This act shall take effect on the sixtieth day after it shall have become a law, except that section one of this act shall take effect immediately [Dec. 29, 2014].''

**L.2010, c. 564 legislation**

Subd. 1.  L.2010, c. 564, § 3, rewrote subd. 1, which had read:

''1.  notify his or her employees, in writing, at the time of hiring of the rate of pay and of the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article, and obtain a written acknowledgement from each employee of receipt of this notice.  Such acknowledgement shall conform to any requirements established by the commissioner with regard to content and form.  For all employees who are eligible for overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by law or regulation, the notice must state the regular hourly rate and overtime rate of pay;''

Subd. 2.  L.2010, c. 564, § 3, rewrote subd. 2, which had read:

''2.  notify his employees of any changes in the pay days prior to the time of such changes;''

Subd. 3.  L.2010, c. 564, § 3, rewrote subd. 3, which had read:

''3.  furnish each employee with a statement with every payment of wages, listing gross wages, deductions and net wages, and upon the request of an employee furnish an explanation of how such wages were computed;''

Subd. 4.  L.2010, c. 564, § 3, rewrote subd. 4, which had read:

''4.  establish, maintain and preserve for not less than three years payroll records showing the hours worked, gross wages, deductions and net wages for each employee.''

L.2010, c. 564, § 1, provides:

''This act shall be known and may be cited as the 'wage theft prevention act'.''

**L.2009, c. 270 legislation**

Subd. 1.  L.2009, c. 270, § 1, rewrote this subd. which had read:

''notify his employees at the time of hiring of the rate of pay and of the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article;''.

L.2009, c. 270, § 2 provides:

''This act shall take effect on the ninetieth day after it shall have become a law and shall apply to all employees hired on or after such date.''

**L.1989, c. 524 legislation**

Subd. 6.  L.1989, c. 524, § 1, eff. Aug. 15, 1989, added subd. 6.

**Former Sections**

Former § 195, relating to cash payment of wages, was added by L.1921, c. 50;  amended by L.1921, c. 642, § 7;  L.1935, c. 235;  L.1951, c. 445, and was repealed by L.1966, c. 548, § 1, eff. Oct. 1, 1966.  See Labor Law § 192.

### Cross References

Farm worker employers, see Labor Law § 679.

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2015 the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules on Electronic Service upon the following parties and participants:

John V. Golaszewski, Esq.
SCHILLER LAW GROUP, P.C.
*Attorneys for Plaintiff*
130 West 42nd Street, Suite 1002
New York, New York 10036

Mark N. Reinharz (MR 6201)
BOND, SCHOENECK & KING, PLLC
*Attorneys for Defendants Looks Great*
*Services, Inc. and Kristian Todd Agoglia*
1010 Franklin Avenue, Suite 200
Garden City, New York 11530
(516) 267-6320
mreinharz@bsk.com

128917.2 9/8/2015