FILED
CLERK

6/23/2016 4:48 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
RENATO AYALA, BLAS GUTIEREZ,
LEONEL JIMINEZ, and MIGUEL SERRANO,
individually and on behalf of all other employees
similarly situated,
      Plaintiff,

    -against-

LOOKS GREAT SERVICES, INC., KRISTIAN
TODD AGOGLIA, and JOHN AND JANE
DOES # 1-10,
      Defendants.
-----------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
14-CV-6035 (ADS) (SIL)

**APPEARANCES:**

**Orans, Elsen, Lupert & Brown LLP**
*Attorneys for the Plaintiff*
130 West 42nd Street, Suite 1002
New York, NY 10036
  By: John V. Golaszewski, Esq., Of Counsel

**Bond Schoeneck & King, PLLC**
*Attorneys for the Defendants*
1010 Franklin Avenue, Suite 200
Garden City, New York 11530
  By:  Mark N. Reinharz, Esq., Of Counsel

**SPATT, District Judge**.

On October 15, 2014, the Plaintiffs Renato Ayala ("Ayala"), Blas Gutierez ("Gutierez"), Leonel Jimenez ("Jimenez"), and Miguel Serrano ("Serrano") (collectively, the "Plaintiffs"), individually and on behalf of all others similarly situated, commenced this action against the Looks Great Services, Inc. ("Looks Great"), Kristian Todd Agoglia ("Agoglia"), and John and Jane Does #1-10 (collectively, the "Defendants").  The Plaintiffs asserted that the Defendants failed to pay them overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (the "FLSA") and New York Labor Law § 650, et seq. (the "NYLL").  They also contended that

1

the Defendants failed to provide them with a notice at the time of their hiring containing their rate of pay and subsequently, failed to provide them with wage statements in violation of NYLL § 195.

On November 3, 2014, the Defendants filed a motion pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule") 12(b)(6) to dismiss the original complaint.

In response, on November 5, 2014, the Plaintiffs filed an amended complaint pursuant to Fed. R. Civ. P. 15(a)(1). The amended complaint set forth the same three causes of action.

In a July 23, 2015 memorandum of decision and order (the "July 23, 2015 Order"), the Court granted the Defendants' motion to dismiss the amended complaint but granted the Plaintiffs leave to re-plead their claims.

On August 25, 2015, the Plaintiffs filed a second amended complaint ("SAC").

Presently before the Court is a partial motion by the Defendants pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Plaintiffs' third cause of action for failure to provide wage statements under NYLL § 195 and the Plaintiffs' claims against Agoglia.

For the reasons set forth below, the Court grants, in part, and denies, in part, the Defendants' motion.

## I. BACKGROUND

Unless otherwise stated, the following allegations are drawn from the SAC and construed in the light most favorable to the Plaintiffs.

The four named Plaintiffs are all New York state residents who were employed by the Defendants as landscape/laborers for the following periods: (i) Ayala was employed by the Defendants from 2004 to at least March 2012; (ii) Gutierez was employed by the Defendants from 2005 to at least March 2011; (iii) Jimenez was employed by the Defendants from 2004 to at

least December 2010; and (iv) Serrano was employed by the Defendants from 2006 to at least March 2011.

Looks Great is a New York corporation with its principal place of business in Huntington New York. It is a landscape company.

Agoglia is an owner, officer, shareholder, and manager of Looks Great. The SAC states "[u]pon information and belief, at all time relevant to the allegations herein, Agoglia had the power to hire and fire employees of Looks Great, establish their wages, set their own work schedules, and maintain their employment records."

According to the Plaintiffs, they normally worked eleven hours per work day, "less any applicable meal or rest periods," six days per week, for a total of approximately sixty hours each work week. From November through December, the Plaintiffs generally worked an additional two Sundays per month. Thus, they worked a total of sixty-nine hours per week during the four weeks of the year when they worked seven days per week.

For their work, the Plaintiffs received straight wages of between $12 per hour and $27 per hour but did not receive overtime compensation.

## II. DISCUSSION

As noted, the Defendants move to dismiss the third cause action and all three claims against Agoglia. The Court will now address the relevant legal standard and each of the Defendants' arguments.

### A. The Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss complaint that "fail[s] to state a claim upon which relief can be granted." When ruling on such a motion, the court "'accept[s] all allegations in the complaint as true and draw all inferences in the non-moving

party's favor.'" LaFaro v. New York Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (quoting Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003)).

However, to survive a 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citation omitted). Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 570 (citation omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted). Accordingly, unless plaintiffs' well-pleaded allegations have "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 569.

In considering a motion to dismiss, a court is generally "limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (citing Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002)). "[W]here matter outside the pleadings is offered and not excluded by the trial court, the motion to dismiss should be converted to a motion for summary judgment." Nakahata

4

v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 202 (2d Cir. 2013) (citing Fed. R. Civ. P. 12(d)).

**B. As to the Third Cause of Action**

In the third cause of action, the Plaintiffs seek liquidated damages up to $2,500 and reasonable attorneys' fees and costs based on the Defendants' alleged failure to provide the Plaintiffs with wage statements for every pay period that complied with the provisions of NYLL § 195.

NYLL § 195(3) requires employers to "furnish each employee with a statement with every payment of wages," listing the following information:

> the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

In addition, subsection 3 requires that statements provided to employees who are not exempt from overtime compensation, such as the Plaintiffs, must also include the "regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." N.Y. Labor Law § 195(3).

Prior to 2010, employees did not have a private cause of action for an employer's failure to provide a proper wage statement under NYLL § 195(3). However, in 2010, the New York Legislature passed the Wage Theft Prevention Act (the "WTPA") "in an effort 'to expand the rights of employees to seek civil and criminal avenues of remedy' against their employers who fail to comply with the labor law." Copper v. Cavalry Staffing, LLC, 132 F. Supp. 3d 460, 466 (E.D.N.Y. 2015) (citing N.Y. Sponsors. Memo., 2010 S.B. 8380, 233rd Leg., 2010 Reg. Sess. (Oct. 28, 2010)).

5

As part of the WTPA amendments, the Legislature for the first time created a private right of action for employees to recover damages against their employers for failure to provide them with proper wage statements. See Labor Law – Wage Theft Prevention Act, 2010 Sess. Law News of N.Y. Ch. 564 (S. 8380) (McKinney 2010). Specifically, under the 2010 version of the WTPA, an employee could recover in a civil action for damages of $100 for each work week that the violation occurred or continued to occur, not to exceed a total of $2,500. (Id.) Notably, the WTPA had an effective date of April 9, 2011.

On December 29, 2014, the Legislature increased the amount of recoverable damages from $100 per week to $250 per week, and the total damages cap from $2,500 to $5,000. See NY Legis. 537 (2014), 2014 Sess. Law News of N.Y. Ch. 537 (A. 8106-C) (McKinney 2014)). This increase became effective on February 27, 2015. Id.

The Defendants seek to dismiss the Plaintiffs' third cause of action under NYLL § 195(3) because, according to the amended complaint, three of the four Plaintiffs — namely, Gutierez Jimenez, and Serrano — ended their employment with the Defendants prior to April 9, 2011, when the WTPA became effective. (See the Defs.' Mem. of Law at 10–11.)

In response, the Plaintiffs acknowledge that Gutierez, Jimenez, and Serrano ended their employment before the WTPA became effective. (See the Pls.' Opp'n Mem. of Law at 7–8.) However, they contend that the Court should not dismiss the entire cause of action because "a portion of [the] Plaintiff Ayala's employment fell within the effective date of the WTPA, and . . . there are a number of anticipated opt-in plaintiffs who will also benefit from the statute's protections." (Id. at 8.)

Employers were obligated to provide wage statements to their employees under the provisions of NYLL § 195(3) prior to April 9, 2011, the effective date of the WTPA. However,

6

prior to that date, there was no remedy available to employees under the NYLL to recover monetary damages against their employers for violating NYLL § 195(3). For this reason, courts have dismissed employees' damage claims against their employers premised on the employers' failure to provide them with wage statements under NYLL § 195(3) where those employees stopped working for the defendant-employers prior to April 9, 2011. See Kone v. Joy Constr. Corp., No. 15CV1328 (LTS), 2016 WL 866349, at *6 (S.D.N.Y. Mar. 3, 2016) ("However, . . . an employee may not recover for wage statement violations that occurred before April 9, 2011 . . . . Thus, only claims arising from violations occurring after April 9, 2011, can survive Defendants' motion to dismiss.") (internal quotation marks and citations omitted); see also Cortez v. 8612 Best Coffee Shop Inc., No. 13CV3095RRMRML, 2015 WL 10709830, at *8 (E.D.N.Y. Aug. 14, 2015) ("Employees who do not receive a copy of this written statement with each payment of wages made on or after April 9, 2011 may recover one hundred dollars in damages for each week that the violation occurs, up to a statutory maximum of $2,500."), report and recommendation adopted, No. 13CV3095 (RRM) (RML), 2016 WL 1559148 (E.D.N.Y. Apr. 18, 2016); Canelas v. A'Mangiare Inc., No. 13 CV 3630 (VB), 2015 WL 2330476, at *5 (S.D.N.Y. May 14, 2015) ("But, as with the WTPA's wage notice provision, an employee may not recover for wage statement violations that occurred before April 9, 2011."); Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 502 (S.D.N.Y. 2015) ("Accordingly, plaintiffs are entitled to statutory damages of $100 per work week, from April 9, 2011, through the end of each plaintiff's employment, not to exceed $2,500 per plaintiff.").

Thus, the Plaintiffs may only assert a damages claim against the Defendants for violating NYLL § 195(3) if those violations occurred after April 9, 2011.

7

According to the amended complaint, Jimenez was employed by the Defendants until "at least December 2010"; and Guitierez and Serrano were employed by the Defendants until "at least March 2011."  Theoretically, the word "at least" implies that these Plaintiffs may have worked beyond December 2010 and March 2011, respectively.  However, based on these vague allegations, it would be speculative to infer that Jimenez, Guitierez, and Serrano worked beyond April 9, 2011.  Indeed, in their opposition memorandum, the Plaintiffs do not dispute that Jimenez, Guitierez, and Serrano did not work for or receive wages from the Defendants after April 9, 2011.  (See the Pls.' Opp'n Mem. of Law at 7–8.)  Therefore, the Court grants the Defendants' motion to dismiss the claims by Jimenez, Guitierez, and Serrano under NYLL § 195(3).

However, the amended complaint states that Ayala worked for the Defendants from 2004 until "at least March 2012."  Thus, construing this allegation as true, the WTPA provides Ayala with a remedy to recover damages from the Defendants from April 9, 2011 until the last time the Defendants allegedly failed to provide him with a proper wage statement.  Accordingly, the Court denies the Defendants' motion to dismiss Ayala's NYLL § 195(3) claim.

**C. As to the Defendant Agoglia**

The Defendants also seek to dismiss all the three causes of action against the Defendant Agoglia because they contend that the SAC fails plead sufficient facts suggesting that Agoglia is an "employer" within the meaning of the FLSA and the NYLL.

The FLSA states that the term, "employer," includes "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C.A. § 203(d).  In this regard, the FLSA is not particularly illuminating because "the definition of 'employer' relies on the very word it seeks to define," and is therefore, somewhat circular.  Irizarry v.

Catsimatidis, 722 F.3d 99, 103 (2d Cir. 2013). The Second Circuit has filled in this interpretive gap by instructing courts to focus on the "economic reality" of the parties' relationship "rather than technical concepts." Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008) (quoting Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33, 81 S. Ct. 933, 6 L.Ed.2d 100 (1961)). Four factors relevant to this determination are:

> whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).

However, the Second Circuit has emphasized that these factors are non-exclusive, and a courts is "free to consider any other factors it deems relevant to its assessment of the economic realities." Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 71-72 (2d Cir. 2003); see also Catsimatidis, 722 F.3d at 104 ("The Second Circuit 'has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances'; we have 'identified different sets of relevant factors based on the factual challenges posed by particular cases.'") (quoting Barfield, 537 F.3d at 141–42).

The NYLL defines "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." N.Y. Lab. Law § 190(3). "Many courts in this Circuit have applied the economic realities test to determine 'whether an employer/employee relationship exists under the FLSA and the NYLL.'" Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 922 (S.D.N.Y. 2013) (collecting cases). However, in Irizarry v. Catsimatidis, *supra*, the Second Circuit suggested that the analyses might be different. 722 F.3d at 117 (declining to rule on the plaintiff's contention that the tests for

9

"employer" status are the same under the FLSA and NYLL because "this question has not been answered by the New York Court of Appeals").

There appears to be some overlap between the two standards and slight differences. Unlike the FLSA standard which emphasizes the "economic realities of the relationship," the New York Court of Appeals has stated that the "critical inquiry" in determining whether an "employment relationship exists" under the NYLL "pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." Bynog v. Cipriani Grp., Inc., 1 N.Y.3d 193, 198, 802 N.E.2d 1090, 1093 (N.Y. 2003). "Factors relevant to assessing control include whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." Fenster v. Ellis, 71 A.D.3d 1079, 1080, 898 N.Y.S.2d 582, 584 (2d. Dep't 2010) (quoting Bynog, 1 N.Y.3d at 198, 802 N.E.2d at 1093).

In any event, under either standard, the Plaintiffs' allegations fall well short of rendering their claims against Agoglia to be plausible. The SAC states "[u]pon information and belief" that Agoglia "is an owner, officer, shareholder, and manager of defendant Looks Great" and that "at all times relevant to the allegations herein, Agoglia had the power to hire and fire employees of Looks Great, establish their wages, set their work schedules, and maintain their employment records."

In their present motion, the Defendants contend that the allegation that Agoglia was an officer of Looks Great is, by itself, not enough to render an FLSA or NYLL claim against him plausible because there are no allegations in the complaint suggesting that he "was actually responsible for the improper pay practices alleged in the [SAC]." (The Defs.' Mem. of Law at 14.) They further contend that the allegation, "Agoglia had the power to hire and fire employees

of Looks Great, establish their wages, set their work schedules, and maintain their employment records," is a mere recitation of the elements of the economic reality test and is therefore, conclusory. (See id.)

In response, the Plaintiffs submit declarations by the Plaintiffs Ayala and Guitierez, in which they both state that they were hired by Agoglia and that Agoglia exercised "hiring and firing authority in connection with the employment of others." (See Golaszewski Decl., Ex. A.) They also attach copies of purported pages from the Defendants' website and a newspaper article in the Mississippi Business Journal describing Agoglia's control over the hiring process of his employees. (See id. Exs. B and D.) Finally, they attach an article from a website, known as "NSCA," stating that Agoglia signed an agreement with the Suffolk County District Attorneys' Office to plead guilty on behalf of Looks Great to charges of underpaying workers in violation of "state prevailing wage laws." (Id. at Ex. C.)

The Plaintiffs assert that these records "conclusively show that Agoglia . . . is intimately involved in the hiring process of Defendant Looks Great, and holds himself out as being responsible for the company's payroll practices," and therefore, can be held liable under both the FLSA and NYLL for the alleged wage violations committed against the Plaintiffs. (See the Pls.' Mem. of Law at 5–6.) In the alternative, they request leave to file a third amended complaint to cure the purported deficiencies in their claims against Agoglia. (See id. at 6–7.)

The Defendants cite to a number of cases that the Court finds to be analogous to this case. For example, in Nakahata v. New York-Presbyterian Healthcare Sys., Inc., No. 11 CIV. 6366 (PAC), 2012 WL 3886555 (S.D.N.Y. Sept. 6, 2012), an FLSA and NYLL complaint stated that the individual defendants were the chief executive officer and senior vice president of a hospital, respectively; had "operational control" over the hospital; and had "authority to make

11

'employment decisions' concerning hirings and firings, and were 'involved in the creation and/or maintenance of the illegal policies.'" Id. at *11.  The court found that these allegations "'assert[] little more than because [the individual defendants held positions as directors and officers], then each must have had authority to take the actions that comprise the 'economic realities' test, and that because each had the authority to take those actions, then each must have in fact taken those actions.'" Id at *12 (alterations in original) (quoting Tracy v. NVR, Inc., No. 04–CV–6541L (MWP), 2009 WL 3153150, at *5 (W.D.N.Y. Sept.30, 2009)).  To accept the adequacy of these allegations, the court reasoned, "'would license suit under the FLSA against every high level officer and board member of large public companies simply because of the position the individual holds.'" Id. (quoting Tracy, 2009 WL 3153150, at *5).  The court further found that the plaintiff had alleged no facts to support the allegations that the "defendants knew of, let alone created or maintained, the purported unlawful payroll policies." Id.  For these reasons, the court granted the defendants' Rule 12(b)(6) motion to dismiss the plaintiffs' FLSA and NYLL claims against the individual defendants.

The Court has identified additional cases in which courts have dismissed complaints asserting similar allegations.  See Serrano v. I. Hardware Distributors, Inc., No. 14-CV-2488 (PAC), 2015 WL 4528170, at *3 (S.D.N.Y. July 27, 2015) (finding that allegations that the principal and CEO of a company "'had the power to (i) fire and hire, (ii) determine the rate and method of pay and (iii) otherwise affect the quality of employment' were 'boilerplate allegations' that 'fail[ed] to raise the Plaintiffs' right to relief 'above the speculative level.'"); Peng Bai v. Fu Xing Zhuo, No. 13 CIV. 05790 (ILG), 2014 WL 2645119, at *4 (E.D.N.Y. June 13, 2014) ("Bai's allegations that Lin had the power to hire, fire, set wages, set work conditions, and maintain employment records are conclusory and inadequate to establish that Lin was an

12

employer, as several courts in this circuit have held.") (collecting cases); Bravo v. Established Burger One, LLC, No. 12 CIV. 9044 (CM), 2013 WL 5549495, at *6 (S.D.N.Y. Oct. 8, 2013) (dismissing a complaint against individual corporate officers because "Plaintiffs allege no specific facts, aside from the elements of the 'economic reality test,' to satisfy their pleading burden.").

However, other district courts have come out differently based on similar allegations. For example, in Leal v. Masonry Servs., Inc., No. 12-CV-588 (DLI) (VVP), 2013 WL 550668 (E.D.N.Y. Feb. 12, 2013), the court found that a complaint adequately alleged that individual defendants were employers under the FLSA based on allegations that the company was of "modest size and scope" and the defendants, "in their capacity as owners and directors of construction businesses operating within this district, had the power to hire and terminate employees, control work schedules and conditions of employment, and set wages." Id. at *3; see also Hernandez v. Habana Room, Inc., No. 11 CIV. 1264 (RMB) (JCF), 2012 WL 423355, at *3 (S.D.N.Y. Feb. 9, 2012) (granting leave to add a FLSA claim against individual officers of the company based on allegations that "the individual defendants 'have all participated in the management and operations' of Habana Room and that 'they each have the power to hire and fire employees, set wages and schedules, and retain their records on behalf of Habana Room'"); Severin v. Project OHR, Inc., No. 10 CIV. 9696 (DLC), 2011 WL 3902994, at *6 (S.D.N.Y. Sept. 2, 2011) ("Plaintiffs assert that in her capacity as Executive Director of Project OHR, Kohn controlled personnel decisions, and had the power to hire and fire, set wages, and otherwise control the terms and conditions of the plaintiffs' employment. Since plaintiffs allege that Kohn had actual influence over hiring and firing decisions, and the terms of their employment, defendants' motion to dismiss the claims against Kohn is denied.").

The Court agrees with the reasoning of Nakahata and the other decisions that have found that the mere recitation that an individual defendant satisfies the elements of the economic reality test, without pleading any factual allegations supporting that claim, is similar to a legal conclusion that does not "raise a right to relief above the speculative level." See Twombly, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."). In the Court's view, the plaintiff must plead facts which make it plausible to infer that the individual defendant had authority take actions that satisfy some of the factors set forth in the economic reality test. As an example, the plaintiff could allege that the individual defendant did hire a *particular* employee; provide actual examples of authority exercised by the individual defendant that tended to show that he had operational control of the company; or plead allegations showing that the individual defendant was the sole decision-maker in a small or medium sized corporation. Any of these allegations would likely "nudge" FLSA and NYLL claims against individual officers of a company "across the line from conceivable to plausible." Id. at 570.

However, there are no such allegations in the SAC regarding Agoglia. Rather, the Plaintiffs rely on the alleged fact Agoglia was an "officer, shareholder, and manager" of Looks Great. There are no allegations suggesting what his duties were or any other allegations from which the Court might plausibly infer that Agoglia had control over the company's employment practices. In addition, the SAC alleges that Agoglia had "the power to hire and fire employees of Looks Great, establish their wages, set their work schedules, and maintain their employment records," which is a mere recitation of the elements of the economic reality test.

As already stated, the court agrees with the line of cases which hold that the allegation that Agoglia satisfies the elements of the economic reality test is, without more, conclusory and thus, fails to establish that Agoglia is an "employer" within the meaning of the FLSA or the

14

NYLL.  In addition, even if true, the mere fact that Agoglia had a managerial title at Looks Great is insufficient, without more information about his role at Looks Great, to plausibly subject him to liability under the FLSA and the NYLL for the allegedly illegal payroll practices at issue in this case.  See Tracy, 2009 WL 3153150 at *6 ("In short, I find that the only well-pleaded factual assertion against Schar and Saville is that he was Chairman and President, respectively, of NVR. Even if the assertions were accepted as true that each had knowledge that the classification of SMRs was disputed in this litigation, such knowledge does not transform Tracy's claim that Schar and Saville were 'employers' under the FLSA from 'conceivable' to 'plausible.'").

In addition, the Court finds that the evidence offered by the Plaintiffs to bolster their contention that Agoglia is an employer under the FLSA and NYLL is not proper for consideration on a Rule 12(b)(6) motion to dismiss.  In the July 23, 2015 Order, the Court refused to consider similar declarations filed by the Plaintiffs in opposition to the Defendants' second motion to dismiss because "[i]t is procedurally improper for the Court to consider a declaration not referred to in a complaint, which is filed solely for the purpose of refuting arguments made in a defendant's brief."  (July 23, 2015 Order at 16–17) (collecting cases); see also Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. 2006) ("[W]e agree with appellant that the district court committed reversible error when, in ruling that the complaint failed to state a claim for which relief could be granted, it considered matters outside plaintiff's complaint.").  For this same reason, the Court does not consider the declarations filed by the Plaintiffs Ayala and Guitierez in opposition to the Defendants' motion to dismiss.

The Plaintiffs assert that the Court can take judicial notice of the articles from the Mississippi Business Journal, "NSCA," and Look Great's website and therefore, can consider

15

them in ruling on the adequacy of the SAC.  The Second Circuit has held "that it is proper to take judicial notice [on a Rule 12(b)(6) motion to dismiss] of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents[.]"  Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008).

However, the Plaintiffs are not offering these articles to establish the fact that Looks Great received press coverage, but rather, to establish the truth of the statements contained in those articles related to Agoglia's role in Looks Great.  Indeed, the Plaintiffs acknowledge as much in their opposition memorandum, "[T]he records conclusively show that Agoglia holds an ownership interest in Defendant Looks Great, is intimately involved in the hiring process of Defendant Looks Great, and holds himself out as being responsible for the company's payroll practices."  (The Pls.' Opp'n Mem. of Law at 4–5) (citing to newspaper articles attached to the Golaszewski Declaration).

Therefore, it is not proper for the Court to take judicial notice of these newspaper articles because the Plaintiffs seek to offer them for the truth of their contents, a point of factual dispute that is not properly decided in the Rule 12(b)(6) context.  See Tomasino v. Estee Lauder Companies, Inc., No. 13-CV-4692 (ERK) (RML), 2015 WL 1470177, at *6 (E.D.N.Y. Mar. 31, 2015)  (declining to take judicial notice of scientific articles under Rule 201 because "the studies could only create a point of factual dispute that is not properly decided on a motion to dismiss"); O'Keefe v. Ogilvy & Mather Worldwide, Inc., No. 06 CIV. 6278 (SHS), 2006 WL 3771013, at *2 (S.D.N.Y. Dec. 18, 2006) ("The Court can, as defendants note, take judicial notice of the fact that these advertisements were published in certain publications and on certain dates, but it cannot make factual inferences based on the content of those advertisements that it could not

16

otherwise make pursuant to its power under Fed. R. Evid. 201 to take notice of widely known and indisputable facts.").

For these reasons, the Court grants the Defendants' motion to dismiss the Plaintiffs' claims against Agoglia.

"When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig., No. 07 CIV. 10453, 2011 WL 4072027, at *2 (S.D.N.Y. Sept. 13, 2011) ("There is a strong preference for allowing plaintiffs to amend inadequate pleadings.") (collecting cases). "Courts have the power to dismiss without leave to amend or replead in 'extraordinary circumstances, such as where . . . the substance of the claim pleaded is frivolous on its face . . . .'" Morrone v. CSC Holdings Corp., 404 F. Supp. 2d 450, 455 (E.D.N.Y. 2005) (Spatt, J) (alterations in original) (quoting Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)). In addition, the "court should freely give leave [to amend] when justice so requires." Cruz v. TD Bank, N.A., 742 F.3d 520, 523 (2d Cir. 2013) (per curiam) (quoting Fed. R. Civ. P. 15(a)). However, leave to amend should be denied if the court finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party or futility of amendment." Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002) (internal citation marks, alterations, and citations omitted).

The Defendants contend that the Court should deny the Plaintiffs' request to replead because they have amended the complaint once as a matter of right, and the Court gave them a second opportunity to amend their complaint after granting the Defendants' motion to dismiss. (See the Defs.' Reply Mem. of Law at i.) The Court disagrees.

17

The Defendants have not identified any bad faith or dilatory motive on the part of the Plaintiffs. While the Defendants have filed two motions to dismiss, neither of those motions put the Plaintiffs on notice of the defect in their claims against Agoglia. The Defendants have also failed to allege that they would suffer any particular prejudice from granting the Plaintiffs leave to file a third amended complaint. Furthermore, although the Court did not consider the evidence submitted by the Plaintiffs for purposes of ruling on the Defendants' motion, the evidence does appear to suggest that the Plaintiffs may in fact have a viable claim against Agoglia. Thus, permitting the Plaintiffs leave to file a third amended complaint would not be futile.

Accordingly, the Court grants the Plaintiffs leave to file a third amended complaint for the sole purpose of curing the deficiencies identified by the Court with regard to their claims against Agoglia.

### III. CONCLUSION

Based on the foregoing, the Court grants the Defendants' motion to dismiss the claims asserted by the Plaintiffs Jimenez, Guitierez, and Serrano under NYLL § 195(3) and denies the Defendants' motion to dismiss the Plaintiff Ayala's NYLL § 195(3) claim. The Court further grants the Defendants' motion to dismiss the Plaintiffs' claims against the Defendant Agoglia without prejudice. The Plaintiffs are granted leave to file a third amended complaint within thirty-days of the date of this Order for the sole purpose of curing the deficiencies identified by the Court with regard to their claims against Agoglia.

**SO ORDERED.**
Dated: Central Islip, New York
June 23, 2016

                                          _/s/ *Arthur D. Spatt*__
                                          ARTHUR D. SPATT
                                     United States District Judge